UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 01-1488(DSD/JMM)

Dale Jenson,

Plaintiff,

v. **ORDER**

**Dan Craft**, in his individual capacity and his official capacity as an FBI agent;
**Dean Albers**, in his individual capacity and his official capacity as Sheriff of Goodhue County,
**Randy Mickelson**, in his individual capacity and his official capacity as deputy sheriff of Goodhue County;
**Patrick Thompson**, in his individual capacity and his official capacity as deputy sheriff of Goodhue County;
**Bob Dissell**, in his individual capacity and his official capacity as deputy sheriff of Goodhue County;
**Scott McNurlin**, in his individual capacity and his official capacity as deputy sheriff of Goodhue County;
**David Price**, in his individual capacity and his official capacity as an FBI agent;
**Herm Dybevik**, in his individual capacity and his official capacity as an officer of the Minnesota Bureau of Criminal Apprehension;
**Steven Betcher**, in his individual capacity and his official capacity as Goodhue County Attorney;
**Carol Lee**, in her individual capacity and her official capacity as Assistant Goodhue

FILED 6-19-02
RICHARD D. SLETTEN, CLERK
Judgment Ent'd. 6-19-02
Deputy Clerk's Initials

County Attorney;
**Brad Wayne**; in his individual capacity and his official capacity as deputy sheriff of Goodhue County; and
**Goodhue County**; a political subdivision of the State of Minnesota,

Defendants.

Theodore D. Dooley, Esq. and Dooley & Reichert, 301 4th Avenue South, Suite 270N, Minneapolis, MN 55415 and Peter J. Nickitas, Esq., Nickitas Law Office, 28 Orme Court, St. Paul, MN 55115, counsel for plaintiff.

Kenneth W. Saffold, Esq., J. Sebastian Stewart, Esq. and Blackwell, Igbanugo, Engen & Saffold, 3601 76th Street West, Suite 250, Minneapolis, MN 55435, counsel for defendant Dan Craft.

Jon K. Iverson, Esq., Jason J. Kuboushek, Esq. and Iverson and Reuvers, 230 Townline Office Plaza, 8585 78th Street West, Bloomington, MN 55438, counsel for defendants Dean Albers, Randy Mickelson, Patrick Thompson, Bob Dissell, Scott McNurlin, Steven Betcher, Carol Lee and Goodhue County.

Jon M. Hopeman, Esq., Eric Reinsche, Esq. and Felhaber, Larson, Fenlon & Vogt, 4200 First Bank Place, 7601 2nd Avenue South, Minneapolis, MN 55402 and Jon K. Iverson, Esq., Jason J. Kuboushek, Esq. and Iverson and Reuvers, 230 Townline Office Plaza, 8585 78th Street West, Bloomington, MN 55438, counsel for defendant David Price.

W. Karl Hansen, Assistant Minnesota Attorney General, 445 Minnesota Street, St. Paul, MN 55101, counsel for defendant Herm Dybevik.

Andrea G. White, Dakota County Attorney, 1560 West Highway 55, Hastings, MN 55033,, counsel for defendant Brad Wayne.

This matter is before the court on defendants' motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), or in

the alternative, for summary judgment pursuant to Federal Rule of Civil Procedure 56.[1] Based on a review of the file, record, and for the following reasons, the court grants defendants' motions and plaintiff's claims are dismissed.

## BACKGROUND

On June 27, 1995, three-year old Jessica Swanson was reported missing to law enforcement authorities from her home in Goodhue County, Minnesota. In the four years that followed the disappearance of Jessica Swanson, Minnesota law enforcement agencies conducted an extensive investigation into her disappearance and were unable to resolve the circumstances surrounding her disappearance. During the period of 1995 through 1999, law enforcement agencies identified the main suspect as Dale Jenson, the live-in boyfriend of Jessica Swanson's mother and the last person to see her.

During the summer of 1999, the Goodhue County Attorney's office and Goodhue County law enforcement agencies concluded that probable cause existed to charge Dale Jenson with the kidnaping of Jessica Swanson as well as with the deprivation of parental and custodial rights. The mother of Jessica Swanson, Michelle Swanson, was to be charged with assisting Jenson. At about the same time

---

[1] Defendant Brad Wayne was dismissed from this matter at the hearing unopposed by plaintiff. (See also Pl.'s Mem. at 30.)

that the decision was made to charge Dale Jenson, the Goodhue County Sheriff, Dean Albers, informed county attorney Steven Betcher that the sheriff would seek the assistance of the Federal Bureau of Investigation ("FBI") in an attempt to interview Dale Jenson. Dale Jenson had been interviewed in excess of 20 times between 1995 and 1999 by law enforcement officers from various agencies within the State of Minnesota. Sheriff Albers indicated to the county attorney that FBI special agent Daniel Craft was highly experienced in interviewing subjects in similar cases. The Goodhue County Attorney's office had no prior knowledge of, nor did they have any experience in working with Mr. Craft.

On August 24, 1999, a meeting was held in the Goodhue County Law Enforcement Center to review with Agent Craft what had happened on the case to that point and the relevant Minnesota law pertaining to criminal suspect interviews.[2] During the meeting, Agent Craft asked what to do if Jenson requested an attorney. Craft was informed that in previous interviews Jenson had requested an

[2] Present at this meeting were Goodhue County Sheriff Dean Albers, Randy Mickelson, Patrick Thompson, Bob Dissell and Scott McNurlin, all of the Goodhue County Sheriff's Department, David Price of the Rochester office of the FBI, Herm Dybezick of the Minnesota Bureau of Criminal Apprehension, and FBI Agent Daniel Craft. Goodhue County Attorney Steven Betcher and Assistant County Attorney Carol Lee also came to the meeting after it had commenced but where not present for all portions of the meeting.

attorney but then revoked the request. It was determined that should Jenson again request an attorney, Craft should ignore the request since it was likely that Jenson would revoke the request.

On August 25, 1999, Dale Jenson was asked to come to the Dakota County Law Enforcement Center in Hastings, Minnesota to meet with the law enforcement officers. Jenson was living in Hastings at that time and he complied with the request. FBI Agent Craft then conducted an interview with Dale Jenson that lasted approximately three hours and ten minutes. The interview was both videotaped and audiotaped. At the beginning of the interview, Jenson was only told part of the Miranda warning. He was not informed that if he could not afford an attorney one would be appointed for him before any questioning and that at any time during the questioning he could exercise the protections provided by the Miranda warning. He was also not asked if he specifically waived his Miranda rights. During the interview, Dale Jenson talked about the need for an attorney and at one point said, "I want an attorney." The interview continued without Jenson talking to a lawyer. Jenson subsequently confessed that he had accidentally killed Jessica and hid her body. That same day, he led law enforcement officers to where he had hidden her body.

On August 26, 1999, Dale Jenson was arraigned on a felony complaint. Mary D. Wingfield, Assistant District Public Defender,

was appointed to represent Jenson. The state provided Jenson and his counsel complete copies of the interview tapes along with other discovery materials.

On September 17, 1999, at a pretrial hearing before the Honorable Richard C. Perkins, Ms. Wingfield, counsel for Jenson, informed the court that Jenson wished to waive the omnibus hearing and intended to plead guilty to manslaughter in the second degree.

At the plea and sentencing hearing on September 24, 1999, before the Honorable Richard C. Perkins, the Goodhue County Attorney Steven Betcher and First Assistant County Attorney Carol Lee appeared on behalf of the state and Mary Wingfield and Anthony Ho, another assistant district public defender, appeared on behalf of Jenson. Scott Swanson from the state public defender's office also appeared. Jenson entered a plea of guilty to one count of manslaughter in the second degree with the charges of kidnaping and deprivation of parental rights being dismissed as a condition of the entry of guilt on the manslaughter charge. When directly questioned by the court, the defendant admitted that he understood the charge and entered a plea of guilty to manslaughter in the second degree. Upon further questioning by the court and by Ms. Wingfield, the factual basis for the manslaughter guilty plea was placed on the record.

Jenson further stated that his attorney had adequately represented his interests and that he had no further questions

regarding the proceeding. Subsequent questioning placed a knowing waiver of defendant's right to an omnibus hearing on the record, at which time the issue of probable cause and the confession could be raised. The record clearly reflects that both the defendant and his attorney knew of the constitutional issues that could have been raised at an evidentiary hearing and that a hearing might have determined that the FBI agent had violated Jenson's Fifth and Sixth Amendment rights in light of the way that the interview was conducted. Jenson expressly waived his right to contest these constitutional issues. Jenson did not appeal his guilty plea to the Minnesota Court of Appeals or the Minnesota Supreme Court.

Jenson has now filed suit pursuant to 42 U.S.C. § 1983 and Bivens v. Six Unnamed Agents, 403 U.S. 388 (1971), alleging that all of the named defendants, in their individual and official capacities, violated: (1) plaintiff's constitutional rights under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution[3]; (2) plaintiff's rights under Article I, Section 6,

[3] Plaintiff brings these claims under 42 U.S.C. § 1983. While plaintiff asserts in his complaint a cause of action for conspiracy under 42 U.S.C. § 1985, he later acknowledges in his memorandum that this was an error and any conspiracy claim should be considered under § 1983. (See Pl.'s Mem. at 28-29 ("The court should take heed of these paragraphs [pleading conspiracy], and view the conspiracies pleaded at Claims IV and V as conspiracies under sec. 1983, not sec. 1985(3) as mistakenly pleaded.").)

7 and 8 of the Minnesota Constitution; and (3) plaintiff's rights pursuant to State v. Scales, 518 N.W.2d 587 (Minn. 1994) and Minn. Stat. § 481.10 (1998).

**DISCUSSION**

**I. Standard of Review**

Defendants bring a motion to dismiss the complaint or, in the alternative, for summary judgment. In considering a motion to dismiss under Rule 12(b)(6), the court must accept as true, in a hypothetical sense, all of the factual allegations in a light most favorable to the non-moving party. See Riley v. St. Louis County, Mo., 153 F.3d 627, 630 (8th Cir. 1998). A motion to dismiss for failing to state a claim should be granted if it is beyond doubt that no relief can be granted under any set of facts when the allegations are construed in a light most favorable to the pleader. County of St. Charles v. Missouri Family Health Council, 107 F.3d 682, 684 (8th Cir. 1997). Rule 12(b)(6) requires a court to treat a motion to dismiss as a motion for summary judgment under Rule 56 when the parties present matters outside the pleadings that the court does not exclude. Fed. R. Civ. P. 12(b)(6); see also Gibb v. Scott, 958 F.2d 814, 816 (8th Cir. 1992). The parties have submitted a substantial number of documents outside the pleadings for consideration in this matter. While the court determines that defendants are entitled to a Rule 12 dismissal since plaintiff

fails to state a viable claim on the pleadings as is discussed in part II of this order, the court also finds, alternatively, that when the court considered matters outside of the pleadings in parts III and IV of this order, defendants are also entitled to summary judgment.[4]

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the burden of demonstrating to the court that no genuine issue of material fact exists. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A fact is material only when its resolution affects the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 250.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. Moreover, if a plaintiff cannot support each essential element of its claim, summary judgment must be

[4] In particular, the court reviewed the transcripts of the August 25, 1999, interview and the September 24, 1999 plea and sentencing hearing in state court.

granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. See id. at 322-23.

With these standards at hand, the court considers the defendants' motions.

## II. Plaintiff Presents No Viable Constitutional Law Claims

### A. No Cause Of Action Under Miranda

The essence of plaintiff's assertion of a violation of his constitutional rights is his allegation that defendants conspired to violate his Miranda rights during the interrogation on August 25, 1999. Plaintiff specifically asserts that defendant Daniel Craft repeatedly ignored his requests for an attorney and continued to question him after he indicated to Craft that he wanted an attorney.[5]

Plaintiff's § 1983 claim on the basis of this alleged constitutional violation, however, is foreclosed by the controlling law in this circuit. In Warren v. City of Lincoln, 864 F. 2d 1436,

---

[5] The Miranda rule only applies to statements made during custodial interrogations. Here, defendants assert that plaintiff was not in custody for purposes of Miranda since he voluntarily came to the police station, was interviewed in an unlocked room, was free to leave at any point during his interview, and at one point, even left the interview room unaccompanied to use the restroom. Although the court tends to agree with defendants' assertion since it is not entirely convinced that the facts demonstrate that plaintiff was in custody for purposes of Miranda at the time that he confessed, the court concludes that it need not directly resolve this issue given its finding that plaintiff's case fails on the other legal bases discussed.

1442 (8th Cir. 1989), the Eighth Circuit held that no cause of action arises under § 1983 for a failure to afford a detainee his rights under Miranda. Instead, the only remedy for a Miranda violation is the exclusion from evidence of any compelled testimony arising therefrom. See id. Since defendant has no cause of action under the controlling law of this circuit, defendants' motions to dismiss must be granted.[6]

**B. No Cause Of Action Under the Sixth Amendment**

Plaintiff has also brought a claim under the Sixth Amendment right to counsel. The Sixth Amendment right to counsel "requires the existence of both 'criminal prosecution' and an 'accused.'" United States v. Gouveia, 467 U.S. 180, 188 (1984). The right "does not attach until after the initiation of formal charges." Moran v. Burbine, 475 U.S. 412, 431 (1986). Thus, a Sixth

[6] The court also concludes that plaintiff cannot sidestep well-settled Eighth Circuit precedent by restyling this matter as a "non-Miranda violation case" under the substantive due process clause of the Fourteenth Amendment. (See Pl.'s Mem at 35, n. 8.) Plaintiff's reliance on Ninth Circuit caselaw is misplaced in light of this Circuit's clear ruling in Warren that a plaintiff cannot maintain an action for questioning "outside" Miranda. See Warren, 864 F.2d at 1442. Moreover, the undisputed circumstances of this case are factually inapposite to the substantive due process cases that plaintiff attempts to rely on. See, e.g., Brown v. Mississippi, 297 U.S. 278 (1936) (confession extracted by beating defendants); Gray v. Spillman, 925 F.2d 90 (4th Cir. 1990) (defendant beaten by police); Wilkins v. May, 872 F.2d 190 (7th Cir. 1989) (confession extracted after police handcuffed defendant and held gun to his head); Ware v. Reed, 709 F.2d 345 (5th Cir. 1983) (beating during interrogation); Duncan v. Nelson, 466 F.2d 939 (7th Cir. 1972) (suspect kept in solitary confinement for 18 day before being handcuffed to chair for 4 hours before confessing).

Amendment right only attaches "at or after the initiation of adversary judicial criminal proceedings - whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." Kirby v. Illinois, 406 U.S. 682, 689 (1972). The mere fact that plaintiff was the focus of a criminal investigation does not cause the right to attach. See United States v. Ingle, 157 F.3d 1147, 1151 (8th Cir. 1998); Warren, 864 F.2d at 1442. Moreover, "the filing of a criminal complaint and the issuance of an arrest warrant do not constitute the initiation of an adverse judicial proceeding for purposes of [the Sixth Amendment right to counsel]". Von Kahl v. United States, 242 F.3d 783, 789 (8th Cir. 2001) (citation omitted).

Here, plaintiff has not pleaded facts, nor can he plead facts, that fall within the ambit of the Sixth Amendment right to counsel. It is undisputed that Jenson voluntarily came to the sheriff's office and that no formal criminal proceeding had been implemented at the time of the interview. The court thus concludes that plaintiff's Sixth Amendment right to counsel was not triggered. Accordingly, the court concludes that plaintiff's Sixth Amendment claim fails and must be dismissed.[7]

---

[7] The court notes that plaintiff appears to concede that his Sixth Amendment claim fails as a matter of law since he acknowledges in his memorandum that he "does not rest [his opposition to defendants's motions] upon the Sixth Amendment." (See Pl.'s Mem. at 28.) Instead, "Mr. Jenson rests his opposition ... on the substantive due process clauses of the Fifth and (continued...)

**C. No Cause Of Action Under Bivens**

Defendants also argue that plaintiff has no cause of action under Bivens v. Six Unnamed Agents, 403 U.S. 388 (1971). Bivens allows federal causes of action for injuries arising from the unconstitutional conduct of law enforcement agents. Bivens, 403 U.S. at 397. Here, plaintiff's Bivens claim is predicated upon the alleged violation of his Fifth and Sixth Amendment rights. However, since the court finds that no violation occurred under either amendment, plaintiff's Bivens claim fails.

Furthermore, a Bivens cause of action for an alleged constitutional violation will not lie in one of two instances: (1) when the defendant demonstrates "special factors counseling hesitation in the absence of affirmative action by Congress;" and (2) when the defendant shows that "Congress has provided an alternative remedy which it explicitly declared to be a substitute for recovery directly under the Constitution and viewed as equally effective." Carlson v. Green, 446 U.S. 14, 18-19 (1980). Defendants assert that since there already exists a remedy to protect those persons allegedly denied their Fifth Amendment Miranda rights, namely, the exclusionary-rule that dictates that any evidence obtained in violation of Miranda will be excluded at trial, there exists no separate Bivens cause of action for the same

---

[7](...continued)
Fourteenth Amendments to the United States Constitution." (Id.)

alleged violation. The court agrees, especially when considering the unambiguous precedent of this Circuit. See Warren, 864 F.2d at 1422 (holding that no constitutional tort action lies for a Miranda violation, rather, exclusionary rule constitutes aggrieved party's remedy). Accordingly, the court concludes that any claim plaintiff asserts under Bivens must be dismissed as a matter of law.

**III. Plaintiff's Previous Guilty Plea Precludes Him From Re-litigating the Constitutionality of His Interrogation**

Notwithstanding the foregoing grounds for dismissal under Rule 12, there is an additional basis for granting defendants summary judgment since plaintiff pleaded guilty to second degree manslaughter in Minnesota state court. Plaintiff did not appeal or challenge that plea. In fact, plaintiff expressly acknowledged and waived the same constitutional claims that he now tries to assert in the present action.

During his plea and sentencing hearing on September 24, 1999, plaintiff, under oath, engaged in the following allocation with his counsel:

Plaintiff's Counsel: There are some things that have come up as well, and that is with regard to the taking of your statement, and that's a constitutional issue that would have been heard at a later evidentiary hearing. The issue would have been whether the officer violated your Fifth and Sixth Amendment Rights in doing so, I am speaking of the special agent involved from the F.B.I; do you understand that?

Jenson: Yes.

Plaintiff's Counsel: If you were to be successful in that regard, that doesn't mean that your case would be dismissed but, it does mean the evidence they obtained, if the Judge would so rule, would not be used against you, not in the State's case-in-chief, anyway; you understand that?

Jenson: Yes.

Plaintiff's Counsel: Again, by pleading guilty here this afternoon, you will not be able to visit that issue either later or should you subsequently change your mind that you want to have a hearing on that, you are giving up that right?

Jensen: Yes.

(See Transcript of Plea and Sentencing Hearing, Betcher Aff., Ex. D at 8-9.)

Plaintiff does not deny that he waived these constitutional issues in that hearing. In fact, he specifically acknowledges in his complaint that:

> Subsequent to questioning placed a knowing waiver to defendant's right to an Omnibus hearing on the record, at which time the issue of probable cause and confession could be raised. It is clear from the record that both the defendant and his attorney knew of the constitutional issues that could have been raised at an evidentiary hearing and that an evidentiary hearing might determine that the FBI agent had violated this [sic] 5th and 6th Amendment rights in conducting the interview in the manner it was conducted.

(Compl. at 4.)

Plaintiff's guilty plea in state court must result in a waiver of the claims that he now attempts to raise. See Williams v. Scharo, 93 F.3d 527, 528 (8th Cir. 1996) (guilty plea forecloses subsequent § 1983 action). Under Minnesota law, and the law of the Eighth Circuit, a guilty plea entered by defendant represented by counsel "operates as a waiver to all non-jurisdictional claims" including constitutional claims. State of Minnesota v. Lothenbach, 296 N.W.2d 854, 857 (Minn. 1980); United States of America v. Vong, 171 F.3d 648, 654 (8th Cir. 1999). Minnesota's Supreme Court used the United States Supreme Court's words to describe the waiver effect of a guilty plea:

> A guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant had solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not therefore raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

Lothenbach, 296 N.W.2d at 857 (quoting Tollet v. Henderson, 411 U.S. 258, 267 (1973)). Moreover, long standing Minnesota law holds that all of plaintiff's constitutional law claims fail because he waived them as part of his guilty plea. See State of Minnesota v. Murphy, 545 N.W.2d 909, 918 (Minn. 1996); State ex rel. Boswell v Tahash, 278 Minn. 408, 415, 154 N.W.2d 813, 817 (1967).

There is no dispute that the interview occurred before Jenson pleaded guilty in court. Plaintiff also acknowledges that when he

entered that plea, he knowingly waived his right to challenge the alleged events of which he now complains. (See Compl. at 4.) On this basis, Jenson has waived any challenge to the underlying constitutionality of his interview with Agent Craft, and the court believes that defendants are entitled to summary judgment.

**IV. Other Bases Preclude Re-Litigation of Claim Arising From Interview**

Defendants also assert that Jenson is precluded from re-litigating the constitutionality of the August 25, 1999, interview on several other bases: (1) under the Rooker-Feldman Doctrine this court may not review a state court's proceeding that would effectively reverse the state court decision; (2) under the doctrine of collateral estoppel plaintiff is barred from re-litigating this matter; and (3) when considering the Supreme Court's decision in Heck v. Humphrey, 512 U.S. 477 (1994), plaintiff is precluded from bringing this type of claim under § 1983. The court agrees with defendants that all of these bases provide further reason why plaintiff's case fails.

**A. Rooker-Feldman**

Defendants correctly assert that plaintiff's claim is barred by Rooker-Feldman. Under the Rooker-Feldman doctrine, federal district courts do not have jurisdiction to review challenges to state court decisions. District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923). A federal action is precluded "if the relief

requested in the federal action would effectively reverse the state court decision or void its rulings." Charchenko v. City of Stillwater, 47 F.3d 981, 983 (8th Cir. 1995)(noting that "the only court with jurisdiction to review decisions of state courts is the United States Supreme Court").

In applying the Rooker-Feldman doctrine, a court must determine:

> [E]xactly what the state court held and whether the relief requested by [plaintiff] in his federal action require determining the state court's decision is wrong or would void its ruling. If the relief requested in the federal action requires determining that the state court decision is wrong or would void the state court's ruling, then the issues are inextricably intertwined and the district court has no subject matter jurisdiction to hear the suit.

Id. The Eighth Circuit has further explained:

> [T]he federal claim is inextricably intertwined with the state court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it. Where federal relief can only be predicated upon a conviction that the state court is wrong, it is difficult to conceive the federal proceeding as, in the substance, anything other than a prohibited appeal of the state court judgment.

Keene Corp. v. Cass, 908 F.2d 293, 296-297 (8th Cir. 1990) (citing Penzoil Co. v. Texaco, Inc., 481 U.S. 1, 25 (1987)).

The issues raised here by Jenson are premised on the claim that he was subjected to a custodial interrogation without access to his legal counsel. Jenson, however, entered into a plea

agreement in state court and the court relied upon Jenson's waiver as a part of accepting his guilty plea, the plea agreement and when entering judgment against him. Clearly, plaintiff's present federal claims are inextricably intertwined with the state court conviction. In order for Jenson to succeed in the present lawsuit, this court would have to find that plaintiff's constitutional rights were violated and that he did not waive in state court his right to challenge the confession arising out of the August 25, 1999, interview. The effect of such a finding would be to void or invalidate his guilty plea. In other words, in order for this case to proceed, this court would have to reverse the state court and set aside plaintiff's plea. This is an action that is prohibited under the Rooker-Feldman doctrine. As a result, the court concludes that plaintiff's claims are precluded by the Rooker-Feldman doctrine.

**B. Collateral Estoppel**

Defendants also correctly assert that plaintiff is barred by collateral estoppel. It is well settled that issues decided in state criminal proceedings may estop subsequent litigation for violations of civil rights under § 1983. See Allen v. McCurry, 449 U.S. 90, 104 (1980); Simmons v. O'Brien, 77 F.3d 1093, 1096 (8th Cir. 1996). Under the full faith and credit statute, 28 U.S.C. § 1738, a federal court generally must afford a state court's determination the same preclusive affect that it would receive in

the state's own courts. Marrese v. Am. Academy of Orthopaedic Surgeons, 470 U.S. 373, 380 (1985); Teleconnect Co. v. Ensrud, 55 F.3d 357, 361 (8th Cir. 1995). Federal courts look first to the law of the state to "promote comity between state and federal courts that has been recognized as a bulwark of the federal system." Allen, 449 U.S. at 96. Because state law applies, the court must examine Minnesota law and determine what preclusive effect its courts would give to plaintiff's guilty plea and knowing waiver of any constitutional challenges to the August 25, 1999, interview.

The standards for invoking collateral estoppel in Minnesota are set forth in Kaiser v. Northern States Power Co., 353 N.W.2d 899, 902 (Minn. 1984):

> 1. The issue is identical to one in a prior adjudication;
> 2. There was a final judgment on the merits;
> 3. The estopped party was a party in privity with a party to the prior adjudication; and
> 4. The estopped party was given a full and fair opportunity to be heard on the adjudicated issue.

After careful review, the court has considered all four factors required for collateral estoppel and determines that all four factors are satisfied here. Accordingly, plaintiff is barred from relitigating the constitutionality of the interview and his subsequent guilty plea.

First, the Miranda issue was addressed in the state criminal proceeding. (See Transcript of Plea Hearing at 8-9.) Clearly, the claims that Jonson now asserts are identical to the ones that he

could have raised in state court had he not entered a guilty plea. Plaintiff and his attorneys had a full opportunity to challenge the constitutionality of his confession in state court but voluntarily chose to waive such challenge. Second, there was a final judgment on the merits. The state court accepted plaintiff's voluntary and counseled guilty plea. Plaintiff was sentenced. Plaintiff did not appeal. Third, the plaintiff was a party to, and the defendants are in privity with, the state court criminal proceeding. Fourth, plaintiff had a full and fair opportunity to challenge the constitutionality of his confession in the criminal proceeding. However, plaintiff chose not to challenge the constitutionality of his interrogation and confession in the state court proceeding, nor did he choose to appeal his voluntary and counseled guilty plea. Therefore, all four elements of collateral estoppel have been satisfied, and plaintiff should not be allowed to re-litigate the constitutionality of his arrest and interrogation. Defendants are entitled to summary judgment on this basis.

**C. Heck Doctrine**

Defendants also correctly assert that plaintiff's claims under § 1983 are precluded by the Supreme Court's holding in Heck v. Humphrey, 512 U.S. 477 (1994). In Heck, the Supreme Court held that to recover damages for an unconstitutional conviction or sentence, "a section 1983 plaintiff must prove that the conviction or sentence has been reversed on appeal, expunged by executive

order, [or] declared invalid by a state court or in a federal habeas corpus proceeding." Until the conviction or sentence has been overturned, the claim is not cognizable under § 1983. See id. Here, for plaintiff to prevail he would need to negate the confession arising from the FBI interrogation and his subsequent guilty plea. Plaintiff fails to make such a showing. He never directly challenged his guilty plea and the court is not aware of any attempt to obtain habeas relief. As a consequence, the court concludes that Heck provides another basis for precluding plaintiff's claims under § 1983 and granting defendants' motions.[8]

**V. Minnesota State Law Claims**

Plaintiff also alleges that defendants violated provisions of the Minnesota State Constitution and various state statutes. Since this court is dismissing all of the federal claims, it concludes that it no longer has jurisdiction over the state law claims and these claims will be dismissed without prejudice. See 28 U.C. §§ 1367(a) and (c)(3); United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966); Richmond v. Board of Regents of the Univ. of Minnesota, 957 F.2d 595, 598-99 (8th Cir. 1992).[9]

---

[8] The court also notes that while defendants make persuasive arguments regarding the issue of immunity, the court will not address the immunity issue given its determination to dismiss this case on the several bases already discussed.

[9] Moreover, even if this court were to retain jurisdiction, most of the state law claims would fail for the same reasons that plaintiff's federal claims fail. Plaintiff cannot re-litigate (continued...)

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that:

1. Defendants' motions to dismiss, or in the alternative for summary judgment [Docket Nos. 18, 21, 24, 28, 44 and 48], are granted;

2. Plaintiff's Claims I, II, III, IV, V, VI of his complaint are dismissed with prejudice; and

3. Plaintiff's Claims VII, VIII, IX, X, XI, XII, and XIII of his complaint are dismissed without prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: June 18, 2002

David S. Doty, Judge
United States District Court

[9](...continued)
matters already determined, knowingly waived, and unchallenged on direct appeal. The court also agrees with defendants' assertion that there is no authority that allows for money damages for causes of action under the Minnesota State Constitution. See Bird v. State Dep't of Public Safety, 375 N.W.2d 36 (Minn. Ct. App. 1985).

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*

Forms/8thcircuitprehearingconf.wpd

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

- ***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.